**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 3295, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**Office of Thrift Supervision, Intervenor.**

No. 93–1488.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 15, 1994.

Decided Jan. 27, 1995.

As Amended Feb. 23, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied April 12, 1995.

Judith D. Galat, Washington, DC, argued the cause, for petitioner. With her on the briefs was Mark D. Roth, Chicago, IL.

William R. Tobey, Deputy Sol., Washington, DC, argued the cause, for respondent. With him on the brief were David M. Smith, Sol., and Wendy B. Bader, Washington, DC, Atty. William E. Persina, Washington, DC, entered an appearance, for respondent.

Richard L. Rennert, Atty., Office of Thrift Supervision, Washington, DC, argued the cause, for intervenor. With him on the brief were Thomas J. Segal, Deputy Chief Counsel, and Elizabeth R. Moore, Asst. Chief Counsel, Office of Thrift Supervision, Washington, DC.

Before: WALD, SILBERMAN, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

Dissenting opinion filed by Circuit Judge WALD.

SILBERMAN, Circuit Judge:

In this case, we affirm a decision of the Federal Labor Relations Authority sustaining the Director of the Office of Thrift Supervision's refusal to bargain over the compensation and benefits of OTS employees with their union, the American Federation of Government Employees, Local 3295.

I.

Petitioner is the collective-bargaining representative of employees of the Office of Thrift Supervision (OTS), the federal agency charged with oversight of the nation's savings and loan industry under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103

Stat. 183 (FIRREA). Prior to FIRREA's enactment, savings and loan institutions, also called thrifts, were primarily regulated by the Federal Home Loan Bank Board, an independent federal agency that operated the Federal Savings and Loan Insurance Corporation and supervised the 12 private regional Federal Home Loan Banks that were the immediate custodians of the nation's thrifts. FIRREA responded to a crisis in the thrift industry thought to be caused at least in part by ineffective and irregular oversight by the Board and the regional Home Loan Banks.

The statute overhauled the existing regulatory framework. It abolished the Board, *id.* § 401, 103 Stat. 354–55, and entrusted the regulation of the savings and loan industry to the newly created OTS, a government agency placed within the Treasury Department, *id.* § 301, 103 Stat. 278–80, 12 U.S.C. §§ 1462a, 1463 (Supp. V 1993).[1] All Federal Home Loan Bank staff as well as various Bank Board and FSLIC personnel engaged in thrift supervision—a body of workers that includes examiners, lawyers, and accountants—automatically became employees of OTS. Recognizing that these organizations had compensated their employees at amounts commensurate with prevailing private-sector salaries, Congress directed that the transferred personnel—three-quarters of OTS' initial staff—were to be compensated at their previous pay levels for one year. *Id.* §§ 403, 404, 722, 103 Stat. 360–63, 426–27. At the Director's discretion, this period of higher payment could be extended for any employee for an additional two years "[w]here necessary or appropriate to further the safety and soundness of the thrift industry." *Id.* § 722(d), 103 Stat. 427.

The question in this case is whether the Director of OTS must negotiate over certain AFGE proposals relating to the compensation and health benefits of OTS employees, including a request for three successive 7.5% annual pay increases for every employee over and above whatever salary increases, bonus-es, and awards would otherwise be due. Generally, labor relations in the federal sector are governed by Chapter 71 of the Civil Service Reform Act of 1978, also referred to as the Federal Service Labor–Management Relations Statute (FSLMRS), 5 U.S.C. §§ 7101 *et seq.* (1988), which authorizes covered federal workers to engage in collective bargaining, directs federal agencies to negotiate with employee representatives in good faith, and provides for mediation procedures to resolve intractable disputes over negotiable matters, *id.* §§ 7102(2), 7114(a)(4), 7119. The scope of the agency's duty to negotiate extends to all "conditions of employment," *id.* § 7103(a)(14)—a term that the Supreme Court has interpreted to include wages and compensation, *see Fort Stewart Schools v. FLRA,* 495 U.S. 641, 645–50, 110 S.Ct. 2043, 2046–49, 109 L.Ed.2d 659 (1990)—unless these matters are otherwise expressly provided for by law, 5 U.S.C. § 7117(a)(1). The salaries of the vast majority of federal workers are set according to statutory schedules. OTS refused to negotiate over the union's compensation and benefits proposals on the grounds that FIRREA was such a law, not because pay rates are set by FIRREA, but because the Act entrusts the Director with unrestricted discretion in setting employee compensation. The union, following the procedures set forth in § 7117(c)(1), referred the dispute to the Federal Labor Relations Authority, which is charged with resolving negotiability disputes under § 7105(a)(2)(E).

## II.

■ The presumption that an agency is obliged to negotiate most subjects of concern to employees can be overcome by indications that Congress intended the agency in question to enjoy complete discretion over the particular matter at issue. *See, e.g., Illinois Nat'l Guard v. FLRA,* 854 F.2d 1396, 1402–03 (D.C.Cir.1988); *Colorado Nurses Ass'n v. FLRA,* 851 F.2d 1486, 1489–92 (D.C.Cir. 1988). The part of FIRREA that addresses

---

1. The legislation also founded the Resolution Trust Corporation to sell off the assets of failed thrifts, FIRREA § 501, 103 Stat. 369, abolished the FSLIC and in its stead created the Savings Association Insurance Fund, operated by the Federal Deposit Insurance Corporation, *id.*

§§ 211, 401(a), 103 Stat. 219, 354, and established the Federal Housing Finance Board to replace the Federal Home Loan Bank Board as supervisory authority of the Federal Home Loan Banks, *id.* § 702, 103 Stat. 413.

the OTS Director's discretion with respect to employee compensation provides:

(1) Appointment and compensation

The Director shall fix the compensation and number of, and appoint and direct, all employees of the Office of Thrift Supervision notwithstanding section 310(f)(1) of Title 31. Such compensation shall be paid without regard to the provisions of other laws applicable to officers or employees of the United States.

(2) Rates of basic pay

Rates of basic pay for employees of the Office may be set and adjusted by the Director without regard to the provisions of chapter 51 or subchapter III of chapter 53 of Title 5.

(3) Additional compensation and benefits

The Director may provide additional compensation and benefits to employees of the Office if the same type of compensation or benefits are then being provided by any Federal banking agency or, if not then being provided, could be provided by such an agency under applicable provisions of law, rule, or regulation. In setting and adjusting the total amount of compensation and benefits for employees of the Office, the Director shall consult, and seek to maintain comparability with, the Federal banking agencies.

12 U.S.C. § 1462a(g).

The Authority thought that the statutory language was ambiguous. It read the broad statement in subsection (1) that compensation would be paid "without regard to the provisions of other laws" as "a strong indication that Congress intended the Director of OTS to have unfettered discretion." That language is similar to "the wording in other statutes which has been held to exempt agencies from the obligation to bargain over matters otherwise affecting conditions of employment of bargaining unit employees." *American Fed'n of Gov't Employees, Local 3295 and U.S. Dept. of the Treasury,* 47 F.L.R.A. 884, 895 (1993) (citing *Colorado Nurses,* 851 F.2d at 1490; *New Jersey Air Nat'l Guard v. FLRA,* 677 F.2d 276, 283 (3d Cir.1982)). Accordingly, the FLRA concluded that, "[s]tanding alone, § 1462a(g)(1) would indicate to us that the Director was granted

exclusive authority." *Id.* The Authority recognized, however, that other provisions of the section muddled somewhat this reading of the statute. The specific reference in § 1462a(g)(2) to two particular aspects of Title 5 was, the FLRA conceded, puzzling in light of the apparently broad scope of § 1462a(g)(1). The Authority thought that matters were further confused by subsection (3), which authorizes the Director to augment compensation and benefits in a manner consistent with the practices of other federal banking agencies but "contains no wording expressly superseding, overriding or otherwise modifying the application of any other statute." *Id.*

In light of these ambiguities, the Authority turned to the legislative history, which it thought supplied clear indications that Congress intended to furnish the Director of OTS with "exclusive, unfettered authority" in setting compensation and benefits. *Id.* The House report accompanying the bill stated that "[t]he Director shall perform the duties of the office and exercise the powers of the office with the degree of autonomy *equal* to that of the Comptroller of the Currency." *Id.* at 896 (quoting H.R.REP. NO. 101–54(I), 101st Cong., 1st Sess. 340 (1989), *reprinted in* 1989 U.S.CONG.CODE & ADMIN.NEWS 86, 136) (emphasis added). The same report said that the Comptroller was expected to "determine[ ]" employee compensation "without regard to the provisions of any other law, including *any* provision of Title 5 of the United States Code." *Id.* (quoting H.R.REP. NO. 101–54(I), 101st Cong., 1st Sess. 409 (1989), *reprinted in* 1989 U.S.CONG.CODE & ADMIN.NEWS 86, 205) (emphasis added). Taken together, the two statements convinced the FLRA that the ambiguity in § 1462a(g) had to be resolved in favor of OTS' interpretation. *Id.* at 898–99.

The Authority believed that legislative history also explained the troubling redundancy of § 1462a(g)(2), again by analogy to a statement regarding the Office of the Comptroller of the Currency. Language identical to § 1462a(g)(2) appears in the part of FIRREA directed at the OCC. *See* 12 U.S.C. § 482 (Supp. V 1993). According to the congressional conference report, the specific ex-

emption served in that context to "confirm[ ] OCC's current exclusion from these provisions [of Title 5 United States Code] based on [OCC's] nonappropriated status." *Id.* at 897 (quoting H.R.CONF.REP. No. 101–222, 101st Cong., 1st Sess. 457 (1989), *reprinted in* 1989 U.S.CONG.CODE & ADMIN.NEWS 86, 496). The Authority observed that since OTS too was a nonappropriated agency "funded by assessments levied on the industry it regulates," it appeared that § 1462a(g)(2) "was not intended to limit the broad preemptive wording of section 1462a(g)(1) but, consistent with legislative intent regarding [the OCC provision's equivalent language], merely was intended to confirm OTS' status as a nonappropriated fund agency." *Id.* at 897–98. Accordingly, the Authority sustained OTS' refusal to negotiate the union's wage and benefit proposals. *Id.* at 899. In a part of its decision not under review today, the Authority also decided that OTS *was* required to negotiate some disputed AFGE proposals that were not related to wages and benefits (and therefore not exempted under § 1462a(g)(1)).

### III.

■ We, of course, owe no deference to the FLRA's interpretation of a statute that it is not charged with administering, *see, e.g., Colorado Nurses,* 851 F.2d at 1488; *Professional Airways Sys. Specialists v. FLRA,* 809 F.2d 855, 857 n. 6 (D.C.Cir.1987); consequently, we consider *de novo* the effect of § 1462a(g) on the OTS Director's obligation to bargain over proposals relating to wages and benefits.[2] And we concede that the wording is rather perplexing. Section 1462a(g)(1) confers on the Director the authority to pay compensation "without regard to the provisions of other laws"—a sweeping

dispensation from all legal constraints. As the Authority rightly observed, *see* 47 F.L.R.A. at 895, we have interpreted similar language in other statutes to indicate that Congress intended agencies to enjoy "unfettered discretion" loosed from the bargaining requirement of § 7114(a)(4). *See Illinois Nat'l Guard,* 854 F.2d at 1402–03 (statutory phrase "notwithstanding any other provision of law" "override[s] any conflicting provision of law") (citing *New Jersey Air Nat'l Guard v. FLRA,* 677 F.2d 276, 279 (3d Cir.1982)); *Colorado Nurses,* 851 F.2d at 1489 (statutory phrase "notwithstanding any law" indicates that Veterans Administration chief "is to be unhampered by ... federal [laws] that might otherwise constrain his authority" and therefore need not bargain under the FSLMRS).

We agree with the Authority, however, that the inclusion of § 1462a(g)(2), which specifically exempts OTS from those chapters of Title 5 that pertain to job classifications and related wage schedules—an exception that apparently would be entirely unnecessary in light of the broad preclusive language that immediately precedes it in § 1462a(g)(1)— confuses what would otherwise be rather clear legislative language.

The union argues that the express exemption from two particular aspects of Title 5 in § 1462a(g)(2) indicates that other aspects of Title 5 apply with full force, including the FSLMRS.[3] The Director, however, has not argued that Title 5 is wholly inapplicable or that OTS need not observe the general strictures of the FSLMRS; the Director has conceded from the start of this litigation that matters not related to compensation are negotiable. The sole contested issue is whether FIRREA excuses the Director from negotiating wages and compensation, not negotiation

---

2. In addition to the arguments discussed here, the Director had also maintained before the FLRA that the proposals were nonnegotiable because they would interfere with the agency's statutory management prerogative to determine its budget under 5 U.S.C. § 7106(a)(1). The FLRA did not address this argument, and thus it plays no role in our decision today.

3. The FLRA asserts that this claim was not raised below and therefore is not properly before the court. But in the decision under review, the Authority itself reasoned along the same lines

that it insists the union is belatedly introducing here, *see Treasury,* 47 F.L.R.A. at 895 ("[I]n contrast to the broad wording of section 1462a(g)(1) ... section 1462a(g)(2) provides that rates of basic pay of employees may be set and adjusted by the OTS Director without regard only to two specific provisions of title 5 of the United States Code."), and the problem presented by § 1462a(g)(2) was considered at length, *see id.* at 897–98. The Authority's own opinion, then, makes clear that the argument it objects to our treating here was squarely presented below.

*tout court.* The union's core argument based on § 1462a(g)(2)—that Title 5 is, in the main, applicable to OTS employment relations— begs the key question in this case, which is whether the Director's obligation to follow the collective bargaining procedures of the FSLMRS applies to the specific action of setting of wages and compensation. Only this particular subset of management decisions, after all, is covered by the exemption of § 1462a(g)(1).

Still, the union asserts that § 1462a(g)(1) has to be read in light of the provision that follows it and that § 1462a(g)(2) "clarifies and limits" its immediate predecessor. Petitioner urges us to accept that the broad preclusive language of subsection (1) ("such compensation shall be paid without regard to the provisions of other laws . . .") applies only to the specific exemptions contained in subsection (2). In essence, the claim is that subsection (1) is without independent effect. Normally we would reject such a suggestion, *see, e.g., Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 562, 110 S.Ct. 2126, 2132–33, 109 L.Ed.2d 588 (1990) (expressing "deep reluctance to interpret a stat-

utory provision as to render superfluous other provisions in the same enactment"), but we recognize that the alternative view advanced by OTS—that § 1462a(g)(1) must be read broadly, freeing the Director from the constraints of all other laws in setting compensation—suffers from the same defect, in mirrored form. Under OTS' reading, the specific exemptions in subsection (2) become unnecessary, even meaningless. In fact, no construction of § 1462a can avoid rendering either subsection (1) or subsection (2) redundant. There is simply no satisfactory interpretation that avoids the problem of reading one of the two provisions out of the statute entirely.[4]

This is one of those cases, however, where legislative history indicates how to resolve ambiguities in the statutory language. Congress apparently intended bank regulatory agencies, which compete for the same pool of skilled professionals, to attempt to maintain rough equivalence in additional compensation and benefits, in keeping with § 1462a(g)(3).[5] Those most likely to compete with one another were evidently given equal degrees of

4. The FLRA thought that the legislative history supported a view of § 1462a(g)(2) as a "confirmatory" provision intended to underscore OTS' "nonappropriated status." This construction strikes us as so far removed from the plain import of the statutory language, however, that the relevant statement in the legislative history— whatever it might mean—cannot control our interpretation.

The dissent too proposes that the ambiguity can be resolved, but it suggests that this can be accomplished by distinguishing between the first and second sentences of § 1462a(g)(1) and the words "fix" and "pay." According to the dissent, the provision's broad exemption applies only to *payment;* the Director's authority to *fix* compensation remains subject to other laws, with the single exception of the classification and wage scale provisions of Title 5. We think it unlikely, however, that Congress intended to make a distinction between "fixing" and "paying."

It could be thought that § 1462a(g) excuses the director from negotiating wages but leaves "benefits" subject to the FSLMRS. Section 1462a(g)(1) provides that "compensation" of employees "shall be paid without regard to the provisions of other laws," whereas § 1462a(g)(3) speaks to "additional compensation and benefits," possibly suggesting a distinction under which "compensation" as used in § 1462a(g)(1) only includes an employee's base salary. We

think, however, that compensation means anything of value an employee receives in connection with employment, particularly as the word has expressly been so used in other federal statutes. *See* 12 U.S.C. § 2279bb(1) ("The term 'compensation' means any payment of money or any thing of current or potential value in connection with employment."); *id.* § 4502(3) (same). Section 1462a(g)(3)'s reference to "additional compensation and benefits" could also plausibly be read as distinguishing between benefits and the "basic rate[] of pay" mentioned in § 1462a(g)(2) rather than between "compensation" and "benefits."

5. The union asserts that § 1462a(g)(3) also supports its claim that the Director does not enjoy "unfettered discretion" over wages—but that provision merely directs OTS to "seek to maintain comparability" of additional compensation and benefits with other federal banking agencies. If anything, the hortatory nature of the language bolsters the impression that Congress intended the Director, "in setting and adjusting the total amount of compensation," to have plenary discretion—to the extent that self-restraint might be necessary to maintain parity among federal banking authorities (parity that Congress was certainly aware would be all but guaranteed if these agencies were expected to negotiate compensation with AFGE).

discretion in setting wages.[6] Congress also expressly contemplated that the Comptroller would be free to fix employee compensation "without regard to . . . any provision of Title 5." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 409 (1989), *reprinted in* 1989 U.S.Cong. Code & Admin.News 86, 205. Since the FSLMRS is contained in Title 5, this latter point can only reasonably be taken to mean that Congress intended the Comptroller to be unconstrained by the negotiation provisions of the FSLMRS in setting employee compensation. And, as we know that the Director was to enjoy the same measure of discretion in setting wages as was the Comptroller, *see id.* at 340 (*reprinted in* 1989 U.S.Cong.Code & Admin.News 136), we can infer that Congress intended the Director not to have to bargain over compensation. In light of this history, we think that § 1462a(g)(1) should be interpreted as having excused the Director from the responsibility to bargain over wages and benefits. Admittedly, no construction of § 1462a(g) can avoid that provision's linguistic difficulties; but we think that this reading is, on balance, the better one.

Petitioner argues that Congress was primarily concerned with OTS' independence from the Secretary of the Treasury—not from other constraints, such as the negotiation obligation of the FSLMRS. To be sure, Congress was especially anxious that the Director of OTS be independent of the Treasury, but that does not mean that administrative autonomy was Congress' only concern (it is surely not inconsistent with an intent to give the Director absolute discretion over wages). And wariness of Treasury's influence cannot explain Congress' intention to have the Director set wages "without regard to the provisions of any other laws, including any provision of Title 5."

Recognizing that legislative history supports the OTS' reading of § 1462a(g)(1), the union ultimately relies upon the unorthodox argument that FIRREA was passed by a "confused" Congress that "labored under the misconception that wages and other benefits could never be negotiable under the FSLMRS" and that, in light of this backdrop of legislative misintelligence, the Act cannot reasonably be construed to have excused the Director from bargaining. It would be nonsensical, petitioner maintains, to assume that FIRREA intended to secure an exemption that Congress thought was already in place. Petitioner suggests that we pay heed to the Supreme Court in *Fort Stewart Schools,* which attributed certain statements in the legislative history to the effect that wages would not be subject to bargaining under the FSLMRS to "the speakers' incomplete understanding of the world upon which the statute will operate." 495 U.S. at 649–50, 110 S.Ct. at 2049. But the statements at issue in *Fort Stewart* were merely overbroad: the vast majority of federal employees' salaries are set by statute and are, therefore, non-negotiable. The disputed statements quite understandably failed to account for the very rare circumstance (such as we have in this case) when wages are not fixed by schedules, but they were basically accurate. *Id.* at 649, 110 S.Ct. at 2048.

Here, by contrast, we are presented with no inconsistent statements. Petitioner asks us to assume that Congress was confused but offers no support for that dicey proposition. Petitioner's hypothesis, moreover, is flatly inconsistent with the familiar principle that Congress legislates with a full understanding of existing law. *See, e.g., Miles v. Apex Marine Corp.,* 498 U.S. 19, 32, 111 S.Ct. 317, 325–26, 112 L.Ed.2d 275 (1990); *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979). Finally, even if we were to accept, *arguendo,* the union's premise, the answer to

---

6. Despite encouraging comparability, Congress has granted varying degrees of discretion to the various federal banking agencies. Thus, the FDIC, unlike the other federal banking agencies enjoined to maintain comparability under 12 U.S.C. § 1833b, is not even expressly excused from the federal classification and wage schedules of Title 5. *See* 12 U.S.C. § 1819(a). Other banking agencies are exempted from these provisions alone. *See id.* § 1441a(a)(5) (Resolution Trust Corp.); *id.* § 1766(j)(1) (National Credit Union Administration Board); *id.* § 2245(c)(2)(A) (Farm Credit Administration). Only the OTS, the OCC, and the Federal Housing Finance Board are authorized to compensate employees "without regard to any other provision of law." *See id.* § 1462a(g)(1) (OTS); *id.* § 481 (OCC); *id.* § 1422b(b)(1) (FHFB).

the central question before us—whether Congress intended for the Director to have exclusive discretion in fixing employee compensation—would remain the same, for nothing in our decision today hinges on Congress' understanding of the *FSLMRS*. It is, rather, Congress' intention in *FIRREA* and *that statute's* granting the Director of OTS exclusive authority over compensation that dictates our answer to the negotiability question and our affirmance of the FLRA's decision below. Whatever Congress may have thought about the agency's bargaining obligation, it follows from our construction of § 1462a(g) that the degree of discretion entrusted to the Director is sufficient to overcome the after-established *Fort Stewart* rule that wages and benefits are "conditions of employment" subject to representative bargaining. Whether Congress understood the FSLMRS when it assigned the Director this measure of discretion is beside the point; Congress need not even have contemplated its applicability. *Compare Colorado Nurses,* 851 F.2d at 1491 ("It is irrelevant that Congress did not affirmatively intend to foreclose collective bargaining so long as Congress did intend to grant sole authority to the Administrator."). The legislative record reveals that the Director's statutory authority to compensate employees "without regard to the provisions of other laws" was specifically intended to exempt him from the application of "any provision of Title 5 of the United States Code." We thus conclude that the FSLMRS—which, after all, is *a component of Title 5*—is inapplicable to the Director's setting of employee compensation.

\*   \*   \*

We therefore affirm the FLRA's decision that FIRREA endows the Director with exclusive discretion over the compensation and benefits of OTS employees and that he is under no obligation to negotiate over these matters with representatives of AFGE.

*So ordered.*

WALD, Circuit Judge, dissenting.

I agree that the statute as written is ambiguous, but, unlike my colleagues, I do not believe that the legislative history definitively resolves the ambiguity in favor of the agency.

Because the collective bargaining provisions of the Federal Service Labor–Management Relations Statute ("FSLMRS"), 5 U.S.C. §§ 7101 *et seq.* (1988), apply unless they are affirmatively disavowed, I conclude that the statutory language, even when supplemented by the legislative history cited, does not clearly grant the Director of the Office of Thrift Supervision ("Director of OTS") complete and unfettered discretion to set compensation, and, thus, that the wage-setting process remains subject to the collective bargaining mandate of §§ 7101 *et seq.*

The FSLMRS requires that a federal agency negotiate in good faith with the union representing its employees over those conditions of employment not otherwise expressly provided for by law. *See* 5 U.S.C. §§ 7102, 7114. For the vast majority of federal employees, wages and compensation are set by statute, and are thus non-bargainable. *See* 5 U.S.C. § 7117. Where wages and compensation are not set by statute, however, the Supreme Court has upheld the Federal Labor Relations Authority's ("FLRA" or "agency") determination that they are "conditions of employment" and thus within the scope of the agency's duty to bargain. *See Fort Stewart Schools v. FLRA,* 495 U.S. 641, 645–50, 110 S.Ct. 2043, 2046–49, 109 L.Ed.2d 659 (1990). Congress, of course, has the power to exempt an agency from this duty to bargain, and this court has found such an intent where Congress granted the agency head authority to "prescribe" certain conditions of employment "notwithstanding" any other law. *See Illinois Nat'l Guard v. FLRA,* 854 F.2d 1396, 1401–03 (D.C.Cir.1988); *Colorado Nurses Ass'n v. FLRA,* 851 F.2d 1486, 1489–92 (D.C.Cir.1988).

The majority concludes that here, as in those cases, Congress granted the Director of OTS complete discretion to set compensation, thus exempting him from the duty to bargain. Examination of the statutes previously found to contain such exemptions, however, instructs that the "language, structure, and history" of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") fails to "demonstrate that Congress intended that the [Director] have ex-

clusive authority" to determine compensation. *Colorado Nurses*, 851 F.2d at 1489.

Our first duty is to look to the language of the statute itself, *see Hughey v. United States*, 495 U.S. 411, 415, 110 S.Ct. 1979, 1982, 109 L.Ed.2d 408 (1990), and I note initially an ambiguity that neither my colleagues in the majority, nor, admittedly, the parties themselves, discuss.[1] Section 1462a(g)(1) has two distinct clauses, providing (a) that the Director shall *"fix"* compensation notwithstanding § 301(f)(1) of Title 31, and (b) that "such compensation shall be paid" without regard to laws otherwise applicable to federal employees. The "without regard" clause refers to the *payment* of compensation, and not to the Director's authority to *fix* that compensation. Thus, while the statute authorizes the Director to *"fix"* the compensation of OTS employees, the exemption from other laws does not clearly extend to this *fixing* of compensation. Rather, the exemption provides that "[s]uch compensation shall be *paid* without regard to the provisions of other laws applicable to officers or employees of the United States." 12 U.S.C. § 1462a(g)(1) (emphasis added).

No party contends that a mere grant of power to "fix" compensation, by itself, constitutes a grant of unfettered discretion.[2] Rather, it is the "without regard to the provisions of other laws" language that is necessary to establish unfettered discretion, and it is not at all clear from the statute that the "without regard" language applies to the fixing of compensation, rather than to the *payment* of such compensation once it is set via the prior fixing process. Unlike the statutes in *Colorado Nurses*, 851 F.2d at 1489 ("notwithstanding any law, Executive order or regulation, the Administrator shall prescribe

by regulation the hours and conditions of employment [of VA medical personnel]"[3]) and *Illinois National Guard*, 854 F.2d at 1401 ("Notwithstanding sections 5544(a) and 6101(a) of title 5 or any other provision of law, the Secretary concerned may ... prescribe the hours of duty for technicians."), the language in § 1462a(g)(1) provides no clear statement that the Director has authority to fix compensation notwithstanding any other provision of law.

The majority noted that the interpretations pressed by both the FLRA and by AFGE posed a redundancy problem by rendering either § 1462a(g)(1) or (g)(2) superfluous. *See ante* at 77. A plausible reading, which avoids statutory redundancy by giving an independent meaning to both subsections, is that the "without regard" clause of § 1462a(g)(1) is designed to exempt OTS employee compensation from payment regulations other than those expressly disclaimed in § 1462a(g)(2). This would include a range of provisions in chapter 55 of Title 5, Pay Administration, *see, e.g.,* 5 U.S.C. § 5504 (establishing biweekly pay periods for Executive agency employees); 5 U.S.C. § 5542 (establishing eligibility for and rates of overtime payment); 5 U.S.C. § 5545 (mandating specific rates of premium pay for nightwork); 5 U.S.C. § 5546 (same for Sunday or holiday work), and in chapter 45 of Title 5, establishing criteria for and caps on incentive awards, *see* 5 U.S.C. §§ 4502, 4503, as well as any restrictions on employing and paying non-U.S. citizens as federal employees, restrictions which Congress expressed a clear intent to avoid with respect to transferred employees elsewhere in the statute, *see* FIRREA § 722(a), Pub.L. No. 101–73, 103 Stat.

---

1. *See Tataranowicz v. Sullivan*, 959 F.2d 268 (D.C.Cir.1992) (Buckley, J., dissenting) ("[W]e are not bound, when interpreting a statute, to rely on the arguments put before us by the parties.").

2. The FLRA has consistently held that authority to "set" or "fix" working conditions, absent a "notwithstanding" clause, does not render those working conditions nonnegotiable, and no party has challenged that rule. *See, e.g., Dept. of Veterans Affairs*, 44 F.L.R.A. 162 (1992) (statute providing that "the Secretary shall ... fix the prices of merchandise ... in canteens" does not "pro-

hibit[ ] the [Secretary] from setting those prices through negotiation with the Union"; "[T]he statute simply grants the Secretary ... the discretion to fix the prices. Under established Authority law, that discretion may be exercised through negotiations.").

3. *Colorado Nurses* interpreted a section of a statute since repealed, then codified at 38 U.S.C. § 4108(a). The full text of that section is cited in the FLRA's decision on review in that case. *See Colorado Nurses Ass'n*, 25 F.L.R.A. 803, 805 (1987).

426 (providing for the transfer of employees of the abolished Federal Home Loan Banks to the new agencies "including employees who otherwise would be ineligible for employment by the United States because of their citizenship").

On its own terms, then, § 1462a(g)(1) is not clear as to whether it grants the OTS authority to *set* compensation notwithstanding any other law, or simply authorizes the *payment* of compensation levels—however set—without regard to other laws. Nor, in my view, does the legislative history establish a clear intent to grant the Director of OTS complete discretion to fix pay. The majority relies on passages from the House Report on the bill stating that the Director of OTS is to have the same degree of autonomy as the Comptroller of the Currency, who, in turn, has the authority to determine compensation notwithstanding any other provision of law. These passages, however, are from the report on the House bill, which unequivocally granted *both* the Director of OTS *and* the Comptroller of the Currency complete discretion to set compensation. As the language in the Act itself has changed materially since then, the accompanying House Report commands far less authority than it otherwise would.

As the majority notes, the House Report states that the "Director shall perform the duties of the office and exercise the powers of the office with the degree of autonomy equal to that of the Comptroller of the Currency." H.R.REP. No. 54(I), 101st Cong., 1st Sess. 340, U.S.CODE CONG. & ADMIN.NEWS 1989, p. 136. With regard to the authority of the Comptroller of the Currency to set compensation, the House Report states that "such compensation shall be determined by the Comptroller without regard to the provisions of any other law, including any provision of Title 5 of the United States Code." *Id.* at 409, U.S.CODE CONG. & ADMIN.NEWS 1989, p. 204.

In the bill on which the House reported, however, there was no syntactical doubt that the "without regard" clause modified the Director's power to *determine* compensation. Nor was there any doubt that the Comptroller of the Currency had a similar grant of authority in that bill. After giving the Director the power to "fix" compensation, the bill continued:

The compensation of employees, attorneys, and agents of the Office *shall be determined without regard to the provisions of any law or regulation (including title 5, United States Code) relating to Federal employee and officer compensation.*

H.R. 1278, 101st Cong., 1st Sess. Sec. 301 § 2A(i)(2) (1989), *reprinted in* H.R.REP. No. 54(I) at 83 (emphasis added). With respect to the Comptroller of the Currency, the bill provided that "[s]uch compensation shall be determined by the Comptroller without regard to the provisions of any law or regulation (including title 5, United States Code) relating to Federal employee and officer compensation." *Id.* at § 1203, *reprinted in* H.R.REP. No. 54(I) at 279. Thus, the parallel the majority draws from the legislative history was, in fact, explicit in the text of the bill: both the Director and the Comptroller were expressly exempted from "the provisions of any law or regulation ... relating to Federal employee and officer compensation."

The parallel remains in the enacted versions of these provisions, but in this case, neither the Director nor the Comptroller is clearly exempted from all other laws in setting compensation. The enacted version of the provision establishing the Comptroller's authority to set compensation exempts the Comptroller *not* from "any law," but only from enumerated laws. Like § 1462a(g)(2), the enacted language regarding the Office of the Comptroller of Currency provides that, "[r]ates of basic pay for all employees of the Office may be set and adjusted by the Comptroller without regard to the provisions of chapter 51 or subchapter III of chapter 53 of title 5, United States Code." 12 U.S.C. § 482.[4]

---

4. The FIRREA also preserves, with some modification not relevant here, a separate and earlier enacted provision on "Appointment of examiners" to the Office of the Comptroller of the Currency. *See* 12 U.S.C. § 481. This section provides that "the *employment and compensation* of examiners ... and of the other employees of the office of the Comptroller of the Currency whose compensation is and shall be paid from assessments on banks or affiliates thereof or from other

There is no explanation in the Conference Report for the change in language. *See* H.R.CONF.REP. 222, 101st Cong., 1st Sess., U.S.CODE CONG. & ADMIN.NEWS 1989, p. 86.[5] But it could as easily suggest a change in the intended scope of wage-setting authority as inadvertence.

Finally, the more general purposes articulated by Congress with respect to the Director's authority do not suggest a clear resolution to the ambiguity of the statute. As the majority notes, the statute and legislative history reveal two concerns in this regard— (1) that the Director of OTS be independent of the Treasury, *see* 12 U.S.C. § 1462a(b)(3) ("The Secretary of the Treasury may not intervene in any matter or proceeding before the Director unless otherwise provided by law."), and (2) that compensation at OTS be competitive with the other financial agencies and unconstrained by compensation caps in order to attract highly-qualified financial officers, *see* H.R.CONF.REP. 222, 101st Cong., 1st Sess. 434, U.S.CODE CONG. & ADMIN.NEWS 1989, p. 473 (explaining that provisions regarding maintenance of previous salary for employees transferred from the private sector reflect legislative concern that FIRREA's goals "not be compromised by the loss of necessary staff, especially the most senior and experienced employees"). These concerns do not point clearly in one direction as to whether the Director has exclusive authority to set the compensation levels of all employees, particularly the nonsupervisory, union-eligible employees. Absent a clearer sign that the statute provides for this exclusive authority, I must conclude that it does not, and that the collective bargaining mandate of §§ 7102 and 7114 of Title 5 applies.

---

fees or charges imposed pursuant to this section *shall be without regard to the provisions of other laws applicable to officers or employees of the United States."* 12 U.S.C. § 481 (emphasis added). If this provision does suffice to place "employment and compensation" matters within the complete discretion of the Comptroller, then the majority's assumption that the Comptroller and Director have equal degrees of discretion must fail. There is simply no statutory basis to conclude that *employment and* compensation, rather than compensation alone, are within the complete discretion of the Director, as the majority has recognized. *See ante* at 76–77. ("The Director ... has not argued that Title 5 is wholly inapplicable.... [T]he key question in this case ... is whether the Director's obligation to follow the collective bargaining procedures of the FSLMRS applies to the specific action of setting of wages and compensation. Only this particular subset of management decisions, after all, is covered by the exemption of § 1462a(g)(1).").

5. The Senate version of the bill also clearly granted complete discretion to the Director of OTS to fix compensation. *See* S.774, 101st Cong., 1st Sess. Sec. 301, § 4(c)(1) (1989), *reprinted in* S.REP. No. 19, 101st Cong., 1st Sess. 133 ("Such compensation shall be determined solely by the Chairman and without regard to the provisions of any law or regulation, including the provisions of title 5, United States Code, relating to the compensation of Federal officers and employees."). The change, then, cannot be explained as the mere adoption of Senate language.